IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LITTLE NELSON, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN,[1] ) <br> ACTING COMMISSIONER OF ) <br> SOCIAL SECURITY, ) <br> ) <br> Respondent. ) | No. 13 C 2902 <br><br> Jeffrey T. Gilbert <br> Magistrate Judge |

**MEMORANDUM OPINION AND ORDER**

Claimant Little Nelson Jr. applied for disability insurance benefits and supplemental security income pursuant to the Social Security Act, 42 U.S.C. §§ 416 and 423. Respondent Carolyn Colvin, Acting Commissioner of Social Security ("Commissioner"), denied his application for disability insurance benefits and supplemental security income. Claimant filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's decision. The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1 for all proceedings, including entry of final judgment. [ECF No. 10]. The parties have filed cross-motions for summary judgment. [ECF Nos. 14, 27]. For the reasons stated herein, Claimant's Motion [ECF No. 14] is granted, and the Commissioner's Motion [ECF No. 27] is denied. This case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin automatically is substituted as the Defendant in the case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

## A. Background

Claimant filed an application for disability insurance benefits and supplemental security income on March 29, 2010, alleging a disability onset date of October 5, 2008. (R.21). Claimant suffers from degenerative joint disease affecting the low back and bilateral hips, substance induced mood disorder, polysubstance abuse (alcohol and marijuana) in alleged current and sustained remission since July 2011. (R.15). Claimant's application for benefits was denied on July 14, 2010, and again after reconsideration on October 20, 2010. (R.21). Claimant requested a hearing before an Administrative Law Judge ("ALJ") on November 21, 2010. (R.21). Plaintiff also requested a consultative physical examination on May 17, 2011. (R. 361-363). A hearing was held by an ALJ on June 8, 2011. (R.58). At the hearing, the ALJ granted Claimant's request for a consultative physical examination. (R.58-59). A consultative physical examination took place on August 25, 2011. (R.1057-71).

A supplemental hearing was held by the ALJ on December 15, 2011. (R.21). Claimant, medical expert Dr. Ellen Rozenfeld and vocational expert Lee Knutson appeared and testified at the second hearing. (R.21). Claimant was represented by an attorney. (R.21). On February 9, 2012, the ALJ denied Claimant's application for disability insurance benefits and supplemental security income and found that Claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. (R.21-36).

Claimant appealed the ALJ's decision to the Appeals Council on March 14, 2012. (R.16-17). The Appeals Council denied Claimant's request for review on February 28, 2013, leaving the ALJ's decision as the final decision of the Commissioner. (R.1).

### B. The ALJ's Decision

In a written opinion dated February 9, 2012, the ALJ denied Claimant's application for disability insurance benefits and supplemental security income and found that Claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. (R.21-36). At step one, the ALJ found that Claimant met the insured status requirement of the Social Security Act through December 31, 2013, and that he had not engaged in substantial gainful activity since October 5, 2008, the date alleged as the onset of his disability. (R.23). At step two, the ALJ found that Claimant had the following severe impairments: degenerative joint disease affecting the low back and bilateral hips; substance induced mood disorder, polysubstance abuse (alcohol and marijuana) in alleged current and sustained remission since July 2011. (R.24).

At step three, the ALJ found that Claimant's impairments, including his substance abuse disorder, met Listings 12.04 and 12.09. (R.25). The ALJ determined that if Claimant stopped the substance abuse, his remaining limitations still would cause more than a minimal impact on his ability to perform basic work activities. (R.25-26). As a result, Claimant would continue to have a severe impairment or combination of impairments, but that the impairment or combination of impairments -- although severe -- would not meet or medically equal any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 404.1520(d)). (R.26).

At step four, the ALJ found that if Claimant stopped the substance abuse, he would have "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift/carry 10 pounds frequently and 20 pounds occasionally; stand/walk 6 hours in an 8 hour workday; sit for 6 hours in an 8 hour workday; and alternate between sitting, standing and walking." (R.27). At step five, the ALJ determined that although Claimant would be unable to perform his past relevant work, "considering the claimant's age, education, work

3

experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform." (R.34-35). Ultimately, the ALJ concluded that Claimant's substance disorder is a contributing factor material to the determination of disability because Claimant would not be disabled if he stopped the substance use and, since there is work that Claimant could perform after July 2011 at which time Claimant entered and has continued to sustain remission of his substance abuse, Claimant is not disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the ALJ's opinion. (R.36).

## II. STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the Social Security Administration and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ thus will reverse the findings of the Commissioner "only if they are not supported by substantial evidence or if they are the result of an error of law." *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pepper v. Colvin,* 712 F.3d 351, 361–62 (7th Cir. 2013) (quoting *Richardson v. Perales,* 402 U.S. 389, 40 (1971)). A court reviews the entire administrative record, but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *McKinzey v. Astrue,* 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted). In other words, when reviewing an ALJ's decision, the question is not whether the claimant is, in fact, disabled; rather, the reviewing court will affirm so long as the ALJ applied the correct legal standard and substantial evidence supported the decision even if reasonable minds could differ

concerning the ultimate conclusion on disability. *See Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012).

An ALJ must build "an accurate and logical bridge" from the evidence to her conclusion. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue,* 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002)); *see also Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009) ("If the Commissioner's decision lacks adequate discussion of the issues, it will be remanded.") "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012).

## III. ANALYSIS

Claimant argues that this matter should be reversed or remanded because: (1) the ALJ's RFC is not supported by substantial evidence; and (2) the ALJ failed to evaluate properly Claimant's credibility. After reviewing the parties' briefs and the administrative record, the Court concludes that (1) the ALJ's RFC is not supported by substantial evidence; and (2) the ALJ's credibility analysis is flawed. Therefore, remand is appropriate.

**A.    The ALJ's RFC Is Not Supported By Substantial Evidence**

Claimant argues that the ALJ's RFC is not supported by substantial evidence in part because the ALJ should have given controlling weight to the opinions of Claimant's treating physicians Dr. Sachs and Dr. Cuaresma. After carefully examining the record, the Court concludes that the ALJ failed to fully consider the effects of Claimant's physical limitations on

his ability to engage in substantial gainful activity, and the Court agrees with Claimant that the ALJ's RFC is not supported by substantial evidence as to his physical limitations.

"The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); Social Security Ruling ("SSR") 96–8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.") The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano,* 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96–8p ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")

### 1. Claimant's Physical Limitations

Claimant's treating physician Dr. Sachs opined that Claimant could "lift/carry 20-50 pounds frequently and occasionally; stand/walk less than 2 hours of an 8 hour workday (as over a bench); sit less than 4 hours in an 8 hour workday (as at a desk); posturally he could either frequently push/pull with hands and feet, kneel, crouch, reach (including overhead), handle,

6

finger and feel; occasionally climb ramps or stairs, balance, stoop, and crawl; and but never climb ladders/ropes/scaffolds." (R.33, 1251-52). The ALJ gave Dr. Sachs's opinion "significant weight but not controlling weight" because "the supporting narrative information provided by Dr. Sachs is contrary to his durational estimates." (R.33). The ALJ rejected Dr. Sachs's opinion that Claimant could stand or walk less than two hours and sit less than four hours in an eight hour workday and determined, instead, that Claimant could "stand/walk and sit 6 hours of an 8 hour workday if given the opportunity to change positions from sitting to standing to walking." (R.33).

The ALJ's assessment appears to be based on his own interpretation of Dr. Sachs's medical records. The ALJ also points to Claimant's testimony to support his RFC. Claimant, however, did not testify that he could stand/walk or sit six hours of an eight hour workday. Claimant testified that the farthest he has walked is 40 minutes, a couple of miles, at a pace that is comfortable to him. (R.100). He testified that he walks about three times a week and sometimes walks around the hospital grounds at night. (R.100). Claimant also testified that cleans his room and does some chores. (R.116). However, he testified that his back goes out three to four times a year and that he has difficulty walking when he back goes out. (R.122). Also, in an offer of proof submitted after the hearing, Claimant proffered that, when his back goes out, he cannot lift at all and can only stand or walk occasionally for about a week. (R.388). Claimant also proffered that his cleaning duties at the hospital take only about 10 minutes. (R.388).

It is well established that an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record. *Rohan v. Chater*, 98 F.3d 966, 968 (7th Cir. 1996); *Buechele v. Colvin*, 2013 WL 1200611, at *11 (N.D. Ill. Mar.

7

25, 2013). In assessing a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence. . . ." *Jarrette v. Colvin*, 2014 WL 1560331, at *13 (N.D. Ill. Apr. 18, 2014) (citing SSR 96-8p). An ALJ adequately discusses his RFC determination "by analyzing the objective medical evidence, the claimant's testimony and credibility . . . and other evidence. *Id.* (citing *Knox v. Astrue*, 327 Fed. App'x. 652, 657-58 (7th Cir. 2009)). An ALJ, however, cannot cherry pick which evidence to evaluate and disregard other critical evidence. *See Scrogham v. Colvin*, 765 F.3d 685, 696–99 (7th Cir. 2014); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

By rejecting Dr. Sachs' opinion, the ALJ created an evidentiary deficit and made his own determination what Claimant could do, which was contrary to the opinion of Claimant's treating physician and Claimant's own testimony. Notably, the vocational expert testified at the hearing that the limitations that formed the basis of Dr. Sachs opinion would have precluded work above the sedentary level. (R.142-43). Yet, the ALJ determined that Claimant was capable of performing light work. (R.27). It is not clear to the Court how, if at all, the ALJ accounted for all of Claimant's testimony about what he did each day and what limitations he had due to his pain. Some limitations were rejected yet other restrictions were accounted for in Claimant's assessed RFC. The ALJ's failure to address any of this evidence prevents a meaningful review of his conclusions. It is unclear whether the ALJ considered this evidence and rejected it without explanation or whether he cherry picked only the evidence that supported his finding. Either way, the ALJ failed to build a logical bridge between the evidence and his conclusion, and remand is necessary.

### 2. Claimant's Mental Limitations

The ALJ found, and the longitudinal record demonstrated, that Claimant's "mood disorder is substance induced and aggravated only when he is abusing substances." (R.25). The ALJ gave "significant weight" to the opinion of the independent medical expert who opined that Claimant's drug and alcohol abuse was material to his disability. The independent medical expert's opinion was consistent with Claimant's treating physician Dr. Sachs. Claimant's treating psychiatrist Dr. Cuaresma, however, opined that Claimant only some of the time (less than half) could carry out detailed instructions, maintain attention and concentration for extended periods, work with or near others without being distracted by them, make simple work-related decisions, interact appropriately with the public, accept instructions and respond appropriately to changes in a work settings. The ALJ gave "limited weight" to Dr. Cuaresma's opinion. (R.34).

The ALJ did a good job going through Claimant's treatment history and analyzing Claimant's mental limitations and how those limitations were impacted by Claimant's substance abuse disorder. The Court is not persuaded by Claimant's argument that his substance abuse disorder was not material to his disability determination and that the ALJ's conclusion that Claimant's substance abuse disorder was a contributing factor to his disability determination was erroneous. To be clear, the Court does not find that the ALJ erred in not giving controlling weight to Claimant's treating psychologist Dr. Cuaresma. The ALJ's determination on Claimant's mental limitations is supported by substantial evidence and the longitudinal record shows that Claimant responded positively to treatment and has improved functioning when he is not abusing substances. (R.31).

For the reasons discussed in Section III.A.1. of this Opinion, the Court finds that the ALJ's assessment of Claimant's physical limitations is flawed, and remand is required. The

9

Court notes that the ALJ's ultimate conclusion that Claimant is not entitled to disability insurance benefits or supplemental security income very well may be correct, but the Court cannot review the soundness of that decision on the record before it under the controlling legal framework without more explanation from the ALJ.

**B. The ALJ's Credibility Determination Is Flawed**

Claimant also argues that the ALJ erred in his credibility analysis. Claimant argues that the ALJ essentially cherry picked the testimony that supported his findings and disregarded his testimony that was inconsistent with the ALJ's findings. [ECF No. 15], at 12-14. The Court agrees with Claimant.

The ALJ is in the best position to determine the credibility of witnesses, and this Court reviews that determination deferentially. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)). In other words, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Id.* To be patently wrong, an ALJ's determination must lack "any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008).

The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. Although an ALJ's credibility determination is entitled to special deference, an ALJ still is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination only may be upheld if he gives

specific reasons for the determination and provides substantial evidence in support of the determination. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009).

Claimant testified he experiences pain daily (R.72, 77) and that his back goes out three or four times a year (R.116). The record shows that Claimant performed some cleaning duties at his residential treatment program. (R.101-04). However, the evidence is conflicting on how significant that work was and whether it was reasonable for the ALJ to have concluded that such activities support the conclusion that Claimant is capable of engaging in substantial gainful activity on a sustained basis.

As discussed above, Claimant also submitted an offer of proof after the hearing in which he proffered that, when his back goes out, he cannot lift at all and can only stand or walk occasionally for about a week and that his cleaning duties at the hospital take only about 10 minutes. (R.390-91). The ALJ did not address this evidence. The ALJ states in her opinion that Claimant "maintains a full daily schedule." (R.33). However, the ALJ fails to address Claimant's testimony that his cleaning duties take him only 10 minutes. (R.390-91). An ALJ cannot cherry pick which evidence to evaluate and disregard other critical evidence. *See Scrogham v. Colvin*, 765 F.3d 685, 696–99 (7th Cir. 2014); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

It is not clear to the Court how, if at all, the ALJ accounted for Claimant's testimony about what he did each day and what limitations he had due to his pain. At one point in his opinion, the ALJ stated that Claimant "testified credibly regarding his ability to walk and stand" (R.29), but Claimant testified that the farthest he had walked was 40 minutes at a pace that was comfortable to him. (R.100). The ALJ characterizes Claimant's testimony about what he does at his residential treatment facility as follows: "[T]he claimant testified to performing a full range of housekeeping duties in his residence program, cleaning the showers of residents, performing

11

dishwashing after meals of 40 residents. He maintains a 5 day schedule of this work including the program requirement." (R.29). However, it is not clear from the record that Claimant performed all of these duties at the same time on a regular basis. The ALJ's characterization of Claimant's testimony also disregards other evidence that is contrary to the ALJ's determination, namely Claimant's post-hearing proffer that his work at the residential treatment facility takes him less than ten minutes to do. Perhaps, the ALJ disbelieved Claimant's testimony that his housekeeping work at this residential treatment facility only takes ten minutes, but the ALJ did not say that or provide a factual basis for such a conclusion.

The ALL also fails to address Claimant's testimony about his daily back pain and how it limits his functioning. The mere listing of daily activities does not establish that a claimant does not suffer disabling pain and is capable of engaging in substantial gainful employment. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). As the ALJ offers no substantive analysis to explain why Claimant's daily activities are consistent with Claimant's ability to engage in substantial gainful activity on a sustained basis, further explanation is needed before the ALJ's credibility determination can be sustained. Also, the ALJ's failure to provide any rationale for why he believes some of Claimant's testimony but not other testimony prevents meaningful review of the ALJ's opinion and in particular his credibility analysis. Therefore, remand is required.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Claimant is disabled, or that Claimant should be awarded benefits for the period in question. To the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## IV. CONCLUSION

For the reasons set forth above, Claimant's Motion for Summary Judgment [ECF No. 14] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 27] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 27, 2016